## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

_____

| In Re: | | Bankruptcy Case |
|---|---|---|

In Re:

David T. Davis and Ronda K. Davis,

                Debtors.

Bankruptcy Case
No. 13-41551-JDP

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

    R. Sam Hopkins, chapter 7 Trustee, Pocatello, Idaho.

    Dale T. Davis, Pocatello, Idaho, *pro se,* Creditor.

### *Introduction*

    Chapter 7[1] trustee R. Sam Hopkins ("Trustee") objected to allowance

of the claim of creditor Dale T. Davis ("Creditor") in this bankruptcy case.

_____

    [1] Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal
Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION – 1

Dkt. No. 99.  Creditor responded to Trustee's objection.  Dkt. No. 104.  On

June 15, 2016, the Court conducted a hearing concerning the matter and

took the issues under advisement.  Dkt. No. 128.  The parties filed post-

hearing briefs.  Dkt. Nos. 131, 132.  Upon consideration of the record,

briefs, and applicable law, this Memorandum constitutes the Court's

findings of fact and conclusions of law, and sets forth the reasons for its

decision.  Rules 7052; 9014.

### *Facts*

David T. Davis and Ronda K. Davis ("Debtors") are the sole owners

of a company they called DH Microsystems ("DHM"), a business that

manufactures components, mostly for boats.  For several years, they both

drew salaries from DHM.  However, when the business's cash flow was

insufficient, they sought financial assistance from Creditor, David's[2] father.


Beginning in 2005, Creditor made several loans to DHM via Debtors,

---

[2] For clarity, the Court will sometimes refer to individuals by their first
names.  No disrespect is intended.

MEMORANDUM OF DECISION – 2

which they used to pay down the business's debt and as operating funds.

These loans are outlined below.

On October 28, 2005, Creditor loaned DHM $15,000, interest free, to

be repaid in installments of $500 beginning October 1, 2006.  Proof of

Claim No. 20, Dkt. No. 109.  The agreement memorializing the loan

contained the following provision:  "If DH MicroSystems, Inc. encounters

favorable business conditions early in 2006, and no unexpected additional

tooling is required, the $500.00 monthly payments will begin as soon as

practical but no later than October 15, as stated above."  *Id*.  This loan was

never repaid.

On July 3, 2007, Creditor loaned DHM $30,000, with interest, as

evidenced in the record by Creditor's cancelled check.  No agreement

concerning the terms of repayment for this loan was supplied to the Court.

According to Creditor, DHM made only one payment of $724.72 on this

loan.

Finally, in July 2008, Creditor agreed to factor some of DHM's

customer accounts receivable.  Again, if they existed, the precise terms of

MEMORANDUM OF DECISION – 3

the parties' factoring agreement were not submitted in evidence, other

than Creditor's representation that he was to receive ten percent on the

invoices he purchased.  Creditor purchased invoices and provided a total

of $32,494.22 to DHM under this factoring arrangement.  He received

payments of $6,133.33 on December 28, 2007, and $585.67 on February 19,

2008, for a total of $6,719.

In sum, Creditor loaned $77,494.22 to DHM between October 2005

and July 2008, and received only $7,443.72 in payments on those loans.

While Creditor regularly "reminded" Debtors about their outstanding

debts to him, because they were members of his family he took no legal

action against them or DHM to collect the loans.

On December 16, 2013, Debtors filed a chapter 13 bankruptcy

petition.  Dkt. No. 1.  The bankruptcy case was converted to a chapter 7

case on Debtors' motion on August 11, 2015.  Dkt. No. 61.  In their

schedules, Debtors listed their ownership interest in DH Microsystems

which they valued at "$0.00".  Schedule B, Dkt. No. 1.  On Schedule F,

Debtors list a debt owed to Creditor as a "Line of Credit" with a balance of

MEMORANDUM OF DECISION – 4

$75,000.  Dkt. No. 1.

On August 31, 2015, Creditor filed a proof of claim in Debtors' case.

Claims Reg. No. 20; Dkt. No. 109.  It alleges that Debtors owe him

$70,050.50 for "money loaned."  *Id.*  Trustee objected to allowance of

Creditor's claim arguing that the loans made by Creditor are debts of

DHM, not Debtors individually, and alternatively, even if the loans are

Debtors' obligations, Creditor's claim is unenforceable under Idaho's

statutes of limitation.  Dkt. No. 99.

### *Analysis and Disposition*

Under Rule 3001(f), a filed proof of claim "constitutes *prima facie*

evidence of the validity and amount of the claim" which, via § 502(a), is

deemed allowed unless a party in interest objects.  *Lundell v. Anchor Constr.*

*Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000); *In re Morrow*, 03.2 IBCR

100, 101 (Bankr. D. Idaho 2003).  If an objection to a proof of claim is made,

the Code instructs the Court to conduct a hearing, to  determine the

amount of the claim, and to allow the claim, except to the extent that "such

claim is unenforceable against the debtor and property of the debtor,

MEMORANDUM OF DECISION – 5

under any agreement or applicable law for a reason other than because

such claim is contingent or unmatured[.]"  § 502(b)(1).

The *prima facie* validity of the proof of claim afforded to a creditor by

Rule 3001(f) does not allocate the burden of proof concerning the validity

of the debt;  it merely operates as a rebuttable evidentiary presumption in

favor of the creditor.  In other words, while the Rule satisfies the creditor's

"burden of going forward" in support of its claim, *In re Garvida*, 347 B.R.

697, 706 (9th Cir. BAP 2006), the applicable "burden of proof is an essential

element of the claim itself [and] one who asserts a claim is entitled to the

burden of proof that normally comes with it."  *Raleigh v. Illinois Dept. of

Revenue*, 530 U.S. 15, 20-21 (2000).

In this case, the applicable law defining Creditor's burden of proof

for his claim under § 502(b)(1) is Idaho law.  *In re Morrow*, 03.2 IBCR at 101

(citing *In re West One Mineral, Inc.*, 96.1 IBCR 12, 13 (Bankr. D. Idaho 1996)).

As noted above, Trustee objects to allowance of Creditor's claim because

he contends the loans Creditor made to Debtors are no longer enforceable

under applicable statutes of limitation.  While Creditor's claim enjoys

MEMORANDUM OF DECISION – 6

*prima facie* validity under the Rules, given Trustee's objection,

Creditor must ultimately prove that the loans constitute debt of Debtors

individually, as opposed to being the debts of their corporation, DHM.  *In*

*re Gray*, 522 B.R. 619, 625 (Bankr. D. Idaho 2014) (under § 502(b)(1),

following Trustee's rebuttal of the prima facie presumption, "the ultimate

burden of persuasion remains on the [creditor] to demonstrate by

preponderance of the evidence that the claim deserves to share in the

distribution of the debtor's assets."); *see also, In re Parrott Broadcasting Ltd.*

*P'ship*, 492 B.R. 35, 38 (Bankr. D. Idaho 2013); *In re Schweizer*, 354 B.R. 272,

279-80 (Bankr. D. Idaho 2006).  On the other hand, the statute of limitations

is an affirmative defense, and the party asserting it bears the burden of

proof.  *Mason v. Tucker and Assocs.*, 871 P.2d 846, 854 (Idaho App. 1994)

(citing *Hawley v. Green*, 788 P.2d 1321, 1327 (Idaho 1990)).  Therefore, here,

assuming the loans are Debtors' debts, Trustee bears the burden of

proving that the Idaho statutes of limitation apply to bar enforcement

those debts against Debtors.

 Applying these rules, the Court will consider each of the loans made

MEMORANDUM OF DECISION – 7

by Creditor in turn.

A.    The 2005 Loan

This loan was made on October 28, 2005.  Attached to Creditor's

proof of claim is a written agreement memorializing this loan signed by

Debtors individually, and a check for the loan proceeds made payable to

DMH.

Even assuming this loan is Debtors' personal obligation, and not the

debt of DMH, Trustee contends the 2005 loan can not be enforced against

Debtors under Idaho's statute of limitations, Idaho Code § 5-216, which

requires that an action "upon a contract, obligation or liability founded

upon an instrument in writing" be commenced within five years.

Trustee is partly correct; most of the loan balance is unenforceable.

Creditor acknowledges that the loan was to be repaid in monthly

installments beginning in October 2006, and that no payments were ever

made.  This was not disputed by Trustee, nor is there any evidence in the

record to the contrary.  Absent an acceleration clause in the parties'

MEMORANDUM OF DECISION – 8

agreement,[3] in Idaho, "[w]here money is payable in installments, the statute of limitations begins to run against a cause of action for the recovery of a delinquent installment as of the time it becomes due." *Horkley v. Horkley*, 173 P.3d 1138, 1139 (Idaho 2007) (citing *H.M. Chase Corp. v. Idaho Potato Processors, Inc.*, 529 P.2d 1270, 1274 (Idaho 1974)).

For this loan, the date that the first installment payment became due was October 15, 2006. Given that the loan was for $15,000 and was interest free, and the installment payments were to be $500 each, presumably the parties intended that 30 monthly installment payments would be made. Therefore, the last installment payment was due on approximately April 15, 2009. And because no payments were made on this loan, all of the installments were delinquent no later than May 15, 2009. Based upon the Court's calculations, then, and applying the Idaho statute of limitations,

---

[3] Where a loan contract contains a clause accelerating the full balance due upon the debtor's default, the Idaho statute of limitations commences to run from the date of that default unless the acceleration clause is elective, in which case, the statute of limitations does not run as to the entire indebtedness unless the lender makes an affirmative election. *See Union Central Life Ins. Co. v. Keith*, 74 P.2d 699, 700 (Idaho 1937).

MEMORANDUM OF DECISION – 9

Creditor could still enforce payment of some of the delinquent installments on this loan as of the date of Debtors' bankruptcy filing. More precisely, it appears the installments that became due on the 2005 loan in November and December of 2008 (and thus became delinquent in December and January of 2009), as well as installments due in January through April, 2009 (and thus delinquent in February through May, 2009) would not be barred by the Idaho statute of limitations as of the December 16, 2013 bankruptcy petition date. In other words, Creditor may seek to collect $3,000 of the 2005 loan balance via his proof of claim.

Of course, even if not barred by the statute of limitations, Trustee contends that the 2005 loan was made by Creditor to DHM, a corporation, rather than to Debtors individually, and as such, the loan can not support a valid claim in Debtors' bankruptcy case. The Court agrees.

The Code defines "debt" as "liability on a claim." § 101(12). In turn, "claim" is defined as "right to payment, whether or not such right is reduced to judgment, . . . ." § 101(5)(A). As noted above, § 502(b) provides that, following an objection, a proof of claim is to be allowed "except to the

MEMORANDUM OF DECISION – 10

extent that . . . such claim is unenforceable against the debtor and property

of the debtor."; *see also In re Hoffman*, 538 B.R. 57, 62 (Bankr. D. Idaho 2015);

*In re Parrott Broadcasting Ltd. P'ship*, 492 B.R. 35, 40 (Bankr. D. Idaho 2013)

(it is "well-established that a claim can not be allowed if it is unenforceable

under nonbankruptcy law" therefore because "Debtor is not directly liable

for the unpaid rent to [creditor] . . . . Trustee's objection to [creditor's]

[proof of claim] on this basis is well-taken.").

After considering the evidence presented here, the Court is

persuaded that Trustee is correct, and that Creditor made the loan to DHM

rather than to Debtors personally.  The parties' agreement recites that the

money was borrowed from Creditor "to help fund the expansion of their

electronic manufacturing company, DH MicroSystems, Inc."  Proof of

Claim No. 20, Dkt. No. 109.  That agreement further provides that if "DH

MicroSystems, Inc. encounters favorable business conditions early in 2006,

and no unexpected additional tooling is required" then the monthly

payments would begin as soon as practical.  *Id.*  Even so, both Debtors

signed the loan agreement, apparently in their individual capacities, as

MEMORANDUM OF DECISION – 11

there is no indication that they signed as agents for DHM.

Given this evidence, the Court finds the agreement to be equivocal and ambiguous. Even though the writing indicates that Debtors borrowed the money, it clearly was loaned with the intent that it fund company expansion, and the loan's payback was tied directly to DHM's performance. Moreover, it seems clear that the loaned funds were never intended to belong to Debtors personally. And importantly, the check from Creditor to fund the loan was made payable to DH MicroSystems; Debtors' names do not appear anywhere on it.

At the hearing, Creditor acknowledged that the loan funds were intended to be used by DHM to pay its debt and as operating funds to continue the business. Of course, some of those operating funds included paying Debtors' salaries, and as such, some of Creditor's loaned funds likely went into Debtors' pockets. However, and this is the key point, it appears Creditor understood that the loaned funds would not go directly into Debtors' personal accounts, but arrived there, if at all, via their paychecks from DHM. Therefore, even though Creditor assumed that

MEMORANDUM OF DECISION – 12

Debtors were personally liable for loan payments, the evidence before the

Court does not support such a finding.

Accordingly, even assuming $3,000 of the balance due on the 2005

loan could be collected despite the statute of limitations, the Court is not

persuaded that this loan was made by Creditor to Debtors personally.

Rather, the 2005 loan was made to DHM, Debtors' company. Because the

loan is not a "debt"enforceable under applicable law against Debtors,

Trustee's objection to Creditor's claim for this loan will be sustained.

B.      The 2007 Loan

This loan was made on July 3, 2007. The Court was provided a

handwritten summary of the terms of this loan authored by Creditor. If

there was an actual agreement memorializing this loan, it is not before the

Court. Lacking such proof, the Court must assume the loan was oral, and

is therefore subject to a Idaho's four year statute of limitations, found in

Idaho Code § 5-217.[4]

---

[4] Idaho Code § 5-217 provides: "**Action on oral contract.** — Within four
(4) years:  An action upon a contract, obligation or liability not founded upon an
instrument of writing."  (emphasis in original).

MEMORANDUM OF DECISION – 13

Unfortunately, Creditor's summary attached to the proof of claim indicates what the interest rate is, but there is no evidence regarding the loan's repayment terms.  The summary indicates only that a single payment for $724.72 was made.  Thus, there is no way of knowing when the agreement was to be repaid, or when it fell into default.

There are two schools of thought regarding application of the statute of limitations to a promise to repay money which fails to include a date for repayment.  Under the majority approach, "courts view the loan as repayable on demand and, because payment could be requested at any time, the action for repayment accrues immediately."  *See, e.g., In re Herman*, 315 B.R. 381, 391-92 (Bankr. E.D. Texas 2004) (citing *Maddox v. City of Fort Smith*, 56 S.W.3d 375, 382 (Ark. 2001); *Vanice v. Oehm*, 526 N.W.2d 648, 653 (Neb. 1995); *Richardson v. Schaub*, 796 P.2d 1304, 1310 (Wyo. 1990); *Akre v. Washburn*, 590 P.2d 635, 637 (N.M. 1979)).  A minority of courts follow general contract law, and supplement incomplete contracts with "reasonable" terms.  *In re Herman*, 315 B.R. at 392.  Under this approach, the courts imply a promise to repay the loan after a "reasonable time", and

MEMORANDUM OF DECISION – 14

the statute of limitations begins to run at a reasonable time after the loan was made.  *See, e.g., Lightle v. Harcourt Mgmt. Co., Inc.*, 634 N.E.2d 858, 861 (Ind.Ct.App. 1994); *Stromblad v. Wilderness Adventurer, Inc.*, 577 P.2d 918, 921 (Okla.App. 1978).

Idaho apparently follows the minority rule.  "[W]hen parties to a contract have not agreed to a term essential to determine their rights and duties, the court supplies a term reasonable in the circumstances."  *Hull v. Giesler*, 331 P.3d 507, 520 (Idaho 2014) (citing Restatement (Second) of Contracts § 204 (1981)).  "Where no time is expressed in a contract for its performance, the law implies that it shall be performed within a reasonable time as determined by the subject matter of the contract, the situation of the parties, and the circumstances attending the performance." *Id*. at 520 (citing *Weinstein v. Prudential Prop. & Cas. Inc. Co.*, 233 P.3d 1221, 1240 (Idaho 2010)); *Star Phoenix Min. Co. v. Hecla Min. Co.*, 939 P.2d 542, 550 (Idaho 1997) (citing *Davis v. Prof. Bus. Servs.*, 712 P.2d 511, 514-15 (Idaho 1985)).  This rule has been applied to oral contracts by Idaho courts. *McCormick Intl USA, Inc. v. Shore*, 277 P.3d 367, 372 (Idaho 2012); *Barnes v.*

MEMORANDUM OF DECISION – 15

*Huck*, 540 P.2d 1352, 1357 (Idaho 1975); *Curzon v. Wells Cargo, Inc.*, 382 P.2d 906, 43 (Idaho 1963).  Accordingly, in this case, because there is no evidence of a due date for the 2007 loan, the Court will imply that the loan was to be repaid after a reasonable term.

Here, the Court knows the amount of the 2007 loan, $30,000, and that a single payment was made to Creditor of $724.72.  From these facts, the Court deems it reasonable to infer that the loan was to be repaid in monthly installments.  Of course, it is unclear exactly what interest rate attached to this loan, as Creditor's proof of claim indicates only that it was to be 2 points less than bank rates.  Assuming the monthly installments were to be $724.72 each, it would take more than 41 months to pay off the loan.  Therefore, if the payment on the loan was made in August 2007, the first month following the July loan, the loan would not be paid off until January, 2011.  Since the applicable statute of limitations allowed four years to enforce the 2007 loan, again, some of the monthly payments would still be actionable by Creditor as of the December 2013 bankruptcy petition date.  Thus, as with the prior loan, the statute of limitations would

MEMORANDUM OF DECISION – 16

not act as a complete bar to Creditor's proof of claim as to this loan.

However, just as with the 2005 loan, Creditor also faces a problem: the identity of the borrower on the 2007 loan.  In this instance, the evidence is even more compelling that the 2007 loan was a corporate loan, and not Debtors' individual debt.  The loan funds were provided via a check from Creditor made out to "DH MICRO SYSTEMS," and there is no written agreement or any other evidence that even hints that it was Debtors who borrowed the money.  As a result, the Court once again is persuaded that the 2007 loan was not made by Creditor to Debtors personally, thus rendering it unenforceable against Debtors' bankruptcy estate.  Therefore, Trustee's objection to Creditor's claim for the 2007 loan will be sustained.

> C.    The Factoring Loans

> Factoring is . . . the sale of accounts receivable of a firm to a factor at a discounted price.  In return for selling the accounts receivable at a discounted price, the seller receives two immediate advantages: (1) immediate access to cash; and (2) the factor assumes the risk of loss. . . . Factoring can be accomplished either by an actual sale of accounts or through their assignment.

MEMORANDUM OF DECISION – 17

*In re Straightline Invs., Inc.*, 525 F.3d 870, 876 n.1 (9th Cir. 2008) (internal

citations omitted); *Boulder Fruit Exp. & Heger Organic Farm Sales v. Transp.*

*Factoring, Inc.*, 251 F.3d 1268, 1271 (9th Cir. 2001) (citing BLACK'S LAW

DICTIONARY (7th ed. 1999)) (factoring is the commercial practice of

converting receivables into cash by selling them at a discount.).

 As with the 2007 loan, the Court was given no evidence or

information regarding the precise terms of Creditor's agreement to

purchase DHM's accounts receivable, aside from the amounts he paid to

DHM, and the dates on which Creditor made those payments. Using this

scant record, the Court can not be sure about whether Creditor was

entitled to seek payment of a factored invoice directly from the account

debtor, or whether DHM would collect payment and remit sums on that

account to Creditor. More importantly, on this evidentiary record, the

Court can not determine whether the agreement was recourse or non-

recourse, which would determine whether Creditor was limited to seeking

payment from the customer, or whether Creditor could have recourse back

against DHM or Debtors for any unpaid invoices. In short, given

MEMORANDUM OF DECISION – 18

Creditor's sparse showing, the Court is unable to find that Debtors are

personally obligated to Creditor under the factoring arrangement.  As a

result, Creditor has not demonstrated that he holds an enforceable claim in

the bankruptcy case, and Trustee's objection to this component of

Creditor's proof of claim must also be sustained.

*Conclusion*

Confronted with Trustee's objection challenging Creditor's right to

collect from Debtors personally, and under the relevant limitations

statutes, Creditor failed to produce sufficient evidence to support his proof

of claim.  Accordingly, Trustee's objection to Creditor's proof of claim will

be sustained, and Creditor's claim will be disallowed by separate order.

Dated:  August 4, 2016

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 19